UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DIANE ZEIDER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:15-CV-317 JD |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Diane Zeider, on behalf of her deceased husband Robert Zeider, seeks judicial review of the denial of Mr. Zeider's claim for disability benefits. For the following reasons, the Court reverses the decision of the Commissioner of Social Security and remands this matter for further proceedings.

## I. FACTS

Robert Zeider worked for many years as a crop sprayer until he was laid off in September 2006. Years later, he applied for social security disability benefits, alleging that he was unable to work due to various physical and mental ailments, including chronic obstructive pulmonary disease, emphysema, high blood pressure, coronary artery disease, and depression. In particular, he claimed that he experienced shortness of breath and difficulty breathing with any exertion, which had prevented him from finding or maintaining any gainful employment since he was laid off. Mr. Zeider's Date Last Insured was December 31, 2011, meaning that he needed to establish that he was disabled by that date in order to qualify for disability benefits. His condition worsened shortly after that date, as he had a heart attack in January 2012. After the

Commissioner had already denied his claim initially and upon reconsideration, Mr. Zeider suffered another heart attack and died on July 7, 2013.

Mr. Zeider's wife, Diane Zeider, was therefore substituted as the claimant and testified at an administrative hearing on Mr. Zeider's behalf. Following the hearing, the Administrative Law Judge issued a written decision finding that Mr. Zeider was not disabled by the time of his Date Last Insured. At step two, the ALJ found that Mr. Zeider had a severe impairment of chronic obstructive pulmonary disease. At step three, she found that Mr. Zeider did not meet or equal any listed impairment. Accordingly, she proceeded to formulate Mr. Zeider's residual functional capacity, which is a description of what an individual can still do despite his limitations. She concluded that through his Date Last Insured, Mr. Zeider had the ability to perform medium work—meaning he could stand and walk for up to 6 hours in an 8-hour day and lift 25 pounds frequently and 50 pounds occasionally—except that he could have only occasional exposure to extreme heat, dust, and other pulmonary irritants. Based on the testimony of a vocational expert, the ALJ concluded that an individual with that residual functional capacity would be unable to perform Mr. Zeider's past work (step four), but that he would be able to perform other jobs (step five). She therefore found that Mr. Zeider was not disabled by his Date Last Insured, so she denied his claim for benefits. The Appeals Council denied Mr. Zeider's request for review, making the ALJ's decision the final decision of the Commissioner. Mr. Zeider filed this suit seeking review of that decision, and this Court has jurisdiction under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. ANALYSIS

Disability insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step

sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, then in between steps three and four, the ALJ then assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Ms. Zeider argues that the ALJ erred in multiple respects. She argues that the ALJ erred at step two by finding that Mr. Zeider's only severe impairment was chronic obstructive pulmonary disease, instead of also including coronary artery disease. She further argues that the ALJ erred at step three by failing to consult an expert to determine whether Mr. Zeider's impairments equaled any listed impairment. She also argues that the ALJ erred in formulating

4

Mr. Zeider's residual functional capacity, which affected the finding at step five. In particular, Ms. Zeider argues that the ALJ ignored or failed to properly account for certain evidence in the record, and that the ALJ's credibility analysis was flawed. The Court agrees with Ms. Zeider on the last point and finds that the ALJ's flawed credibility analysis requires a remand for further proceedings. After discussing that issue, the Court briefly touches on some of the remaining arguments.

A.  **Credibility Analysis**

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2; *see also Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013)). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

The Court finds that the ALJ committed those errors here, and that a result, the credibility finding is not supported by substantial evidence. First, during her credibility discussion, the ALJ repeatedly noted that Mr. Zeider sought only limited treatment and did not take his medications as prescribed. An ALJ may consider as part of the credibility analysis whether the claimant sought treatment commensurate with their claimed limitations. SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the

5

level of complaint, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). But in doing so, the ALJ must also consider any explanations for failing to seek or comply with treatment.[1] *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (similar); SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). In particular, a claimant's inability to afford medication or doctors' visits can excuse the failure to seek such treatment. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment" (citing SSR 96-7p, at *8)).

Here, despite citing and relying on Mr. Zeider's limited treatment history and his failure to take medications as prescribed, the ALJ failed to consider any explanations for those factors. That is a notable omission, since there is abundant evidence that Mr. Zeider was unable to afford the treatment and medications. Ms. Zeider mentioned during her testimony that Mr. Zeider would not go to a doctor because they did not have medical insurance. (R. 31). In addition, nearly every reference in the medical records to Mr. Zeider's failure to take prescribed medications or pursue recommended treatment is accompanied by a note that he was unable to

---

[1] This same requirement applies if the ALJ relies on non-compliance as evidence that the claimant would not be disabled if they followed the treatment prescribed by their doctor. 20 C.F.R. § 404.1530(b), (c); *Buchholtz v. Barnhart*, 98 F. App'x 540, 545–46 (7th Cir. 2004).

6

afford those measures. (R. 223 (noting that Mr. Zeider "wasn't able to afford [Plavix] until June and so he's been taking Plavix since June"); 227 ("The patient started taking his blood pressure medications about six weeks ago but prior to that was not taking any medication secondary to cost. The patient has been having trouble getting his medications because of cost."); 245 (noting that Mr. Zeider "states [he] has had 'lots of tests' but can't afford to get more done"); 250–51 ("[P]atient admits to not taking medications. States . . . he is supposed to be on meds, but doesn't take them or get testing done as directed b/c he has no insurance or money to pay."); 287 ("he has not had followup for [his heart attack] because he has not had insurance and has not been in that much."); 303 ("Spoke with Pt's wife, she stated it will 'take some convincing' to get him to see a specialist because they do not have insurance.").

The ALJ erred in failing to at least consider this explanation before discrediting the testimony about Mr. Zeider's limitations based on his lack of treatment or compliance.[2] *Craft*, 539 F.3d at 679; *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (finding that the ALJ erred in discrediting the claimant based on an absence of objective support for the limitations, where the claimant's lack of insurance prevented her from seeking medical attention). The Commissioner argues in response that there is no evidence that Mr. Zeider sought and was denied reduced cost treatment. However, while an ALJ is free to take that into account,

---

[2] In addition, the ALJ stated that "medical noncompliance may have been a significant factor in the claimant's increased symptomology." (R. 17). However, she did not cite any evidence linking any medical noncompliance to Mr. Zeider's functional limitations. While there are references in the record that Mr. Zeider's blood pressure was not controlled when he was not taking his medication, Mr. Zeider's alleged limitations were his shortness of breath and wheezing due to his chronic obstructive pulmonary disease and emphysema. The record does not appear to connect those symptoms to his blood pressure or to any lack of treatment. In fact, as the ALJ noted, Ms. Zeider testified that Mr. Zeider's breathing treatments did not improve those symptoms. (R. 17). Thus, the record does not support this assertion by the ALJ.

7

the ALJ here did not do so, and this Court cannot affirm the Commissioner's decision for reasons not relied on by the ALJ.

The ALJ relatedly noted that Mr. Zeider "smoked a pack of cigarettes per day despite his reported symptoms," and that he continued to smoke until he died. (R. 17). This was also improper, as the Seventh Circuit has disapproved of relying on claimants' smoking as evidence of their lack of credibility. *Shramek v. Apfel*, 226 F.3d 809, 812–13 (7th Cir. 2000); *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). As the Seventh Circuit noted in *Shramek*, a failure to quit smoking is more likely indicative of a claimant's addiction than a lack of limitations, and is not an adequate basis for an adverse credibility finding:

> [T]he ALJ erred in relying on her failure to quit smoking as evidence of noncompliance and as a basis to find her incredible. We note that even if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful. Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

226 F.3d at 813. Here, the ALJ failed to acknowledge Mr. Zeider's likely addiction to cigarettes, and did not explore whether he had tried to quit and failed, for example, or why he continued smoking. Thus, Mr. Zeider's failure to quit smoking adds no support to the ALJ's credibility finding.

The ALJ also failed to properly consider Mr. Zeider's activities of daily living and his work activities when she relied on those factors in her credibility assessment. An ALJ can and should consider a claimant's activities when evaluating their credibility. *Roddy*, 705 F.3d at 639. As the Seventh Circuit has warned, though, "this must be done with care." *Id.* In particular, the Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if

that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Id.* Similarly, when an ALJ considers a claimant's activities, they should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680. In other words, an ALJ cannot adopt a "'sound-bite' approach in evaluating the record" by citing a claimant's activities without acknowledging their context or effects. *Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015).

The Court finds that the ALJ's discussion of Mr. Zeider's activities reflects such an approach and does not support an adverse credibility determination. The ALJ concluded that Mr. Zeider's "daily activities reveal a significant level of function notwithstanding his alleged symptoms." (R. 17). The ALJ explained: "The claimant independently attended to personal hygiene and grooming and occasionally prepared simple meals. The claimant drove to errands and appointments." (R. 17). Those modest tasks are not in any way inconsistent with the limitations that the Zeiders described, nor are they indicative of an ability to maintain full-time work. The ALJ then continued, "He mowed the lawn weekly, using a riding mower. Mrs. Zeider testified that property is on two acres." (R. 17). The records that the ALJ cites, though, indicate that this task took Mr. Zeider "30 minutes once a week, if needed, with breaks." (R. 159, 179). Those qualifications are absent from the ALJ's decision. And when viewed in that context, the fact that Mr. Zeider spent 30 minutes once a week sitting on a riding mower, while taking breaks, does not suggest that Mr. Zeider was less limited than he or his wife claimed, or that he was able to maintain full-time work.

The ALJ's discussion of Mr. Zeider's work activities was similarly flawed. The ALJ noted that from 2006 to 2011, Mr. Zeider did some seasonal crop-spraying and worked four to

six hours weekly doing odd jobs for farmers such as mowing and hauling. She concluded that "[t]hese activities demonstrate a greater level of function that what Mrs. Zeider alleges." (R. 18). It is not apparent how so, though. Ms. Zeider alleged that Mr. Zeider was unable to walk for more than short distances or exert himself because he would become short of breath. These work activities appear to have involved sitting in either a riding mower or a tractor or truck, and are not facially inconsistent with the Zeiders' statements about Mr. Zeider's limitations. In fact, Mr. Zeider had reported that this work involved sitting "almost all" the time, and involved "very little" walking, standing, or lifting, (R. 168), but the ALJ did not acknowledge those details. The ALJ also noted, citing a medical report, that Mr. Zeider worked part-time in a wholesale job in January 2012. The ALJ's decision does not indicate what Mr. Zeider did at that job or for how long, or otherwise attempt to show how that activity is inconsistent with Ms. Zeider's testimony. That activity thus does not meaningfully support the ALJ's credibility finding either.

None of the other evidence noted by the ALJ would independently support the credibility finding apart from these shortcomings, either. The ALJ noted that there is no evidence of "functional abnormalities (i.e. normal gait and station . . . [)], [and] no evidence of motor abnormalities or range of motion deficits," (R. 17), but Mr. Zeider never suggested otherwise, and did not claim to be limited in any of those respects. The ALJ also noted that the recurrent exacerbations of Mr. Zeider's chronic obstructive pulmonary disease occurred when he "developed secondary pulmonary conditions such as acute pneumonia and bronchitis."[3] (R. 17). The ALJ did not explain, though, why those exacerbations should be considered apart from, and not viewed as consequences of, Mr. Zeider's chronic obstructive pulmonary disease. In addition,

---

[3] The ALJ also attributed the exacerbations to Mr. Zeider's failure to take his medication, but that reasoning is improper for the reasons explained above.

10

Mr. Zeider claimed that his shortness of breath with exertion was chronic, and not limited to the exacerbations, so even disregarding the exacerbations would not be a ground for discrediting Mr. Zeider as to his shortness of breath.

For those reasons, the Court finds that the ALJ's credibility analysis was flawed and was not supported by substantial evidence. This error was not harmless, as if the ALJ had attributed greater credibility to the Zeiders' claims about Mr. Zeider's limitations, she might have incorporated more restrictive limitations into her residual functional capacity finding, which could affect her conclusion at step five. Therefore, the Court remands this case to the Commissioner for further proceedings.

**B.      Remaining Arguments**

Having determined that this case must be remanded on that basis, the Court need not decide whether any of the remaining arguments would independently require a remand. However, the Court will briefly address Ms. Zeider's arguments as to steps two and three.[4] First, Ms. Zeider argues that the ALJ erred at step two by finding that only Mr. Zeider's chronic obstructive pulmonary disease was a severe impairment by his Date Last Insured, and by not also finding that coronary artery disease was a severe impairment. Ms. Zeider's arguments are misplaced in focusing on step two, though. Step two is merely a threshold at which an ALJ determines whether the claimant has at least one medically determinable impairment that is severe. If not, the analysis ends and the claimant is not deemed disabled. If so, the ALJ proceeds to the next steps, at which point the analysis is not cabined by how many severe impairments a

---

[4] The Court expresses no opinion as to the other arguments about Mr. Zeider's residual functional capacity (which Ms. Zeider is free to pursue on remand), except to note that they would not justify a direct award of benefits as opposed to a remand for further proceedings; it is the ALJ's role to evaluate the evidence, and the evidence here is not so one-sided as to mandate a finding that Mr. Zeider was disabled.

claimant has. Thus, so long as a claimant satisfies this threshold inquiry, the question is only whether the ALJ properly applied the latter steps. *Curvin v. Colvin*, 778 F.3d 645, 649–50 (7th Cir. 2015); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Sept 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment."). Ms. Zeider's argument is thus better directed at whether the ALJ properly accounted for Mr. Zeider's limitations in the residual functional capacity finding (which must incorporate all limitations, whether severe or not) in connection with steps four and five.

As to the substance of her step-two argument, Ms. Zeider argues that the ALJ failed to consider evidence from after Mr. Zeider's Date Last Insured—primarily, his heart attack less than a month later—as that evidence may still be probative of the presence and effects of coronary artery disease prior to that date. Ms. Zeider is correct that an ALJ must consider evidence even if it post-dates the Date Last Insured. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225–26 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). It is not clear that the ALJ failed to do so, though, as she did acknowledge and discuss evidence from after the Date Last Insured. Since this case is being remanded anyway, the parties may take up on remand what effect this evidence should have on the ALJ's finding; the Court would simply note that the ALJ should consider this evidence and explain her handling of it in her decision.

Finally, Ms. Zeider argues that the ALJ erred at step three by failing to consult a doctor to determine whether Mr. Zeider's conditions met or equaled any listing. However, two different doctors considered whether Mr. Zeider met or equaled a listing, and both concluded that there

was insufficient evidence to make such a finding. (R. 58, 65). Ms. Zeider does not give any reason why a third doctor would reach a different opinion, nor does she suggest that there is any additional evidence for another doctor to consider. Without any indication of what consulting another doctor would accomplish, the Court cannot find that the ALJ erred by not doing so. If there is additional evidence to consider on the question of equivalence, though, Ms. Zeider may raise the issue on remand.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner denying Mr. Zeider's claim for benefits is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  August 31, 2016

      /s/ JON E. DEGUILIO  
Judge  
United States District Court